UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER STORCH,

Plaintiff,

v. CASE No. 8:25-cv-2281-SPF

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

___________________________________/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI. (Tr. 439–440, 450–466). The Commissioner denied Plaintiff's claims initially and upon reconsideration. (Tr. 104–123). Plaintiff then requested an administrative hearing. (Tr. 260–261). Per Plaintiff's request, the ALJ held a hearing on July 29, 2021, at which Plaintiff appeared and testified. (Tr. 74–103). Following the hearing, the ALJ issued a partially favorable decision, finding Plaintiff disabled from May 9, 2017, through July 23, 2018, but concluding that Plaintiff's disability ended on July 24, 2018 based on an increase in Plaintiff's residual functional capacity. (Tr. 148–72). Following a referral from the Office of Disability Operations, the Appeals Council vacated

the hearing decision under the authority of 20 CFR 404.977 and 416.1477 in part because "a period of disability cannot be established which ends more than 12 months before the month the claim was filed" and "the earliest [supplemental security income] benefits [are] payable is as of the month after the month of the application was filed" and remanded the matter for further proceedings. (Tr. 175–76). A new hearing was held on May 23, 2022, at which Plaintiff appeared and testified. (Tr. 42–73, 260–261). Following the hearing, the ALJ issued a written decision finding Plaintiff not disabled and denying Plaintiff's claims for benefits. (Tr. 775–803). Plaintiff then requested review from the Appeals Counsel which denied review. (Tr. 1–6). Following the denial, Plaintiff filed suit in the United States District Court for the Middle District of Florida, Case. No. 8:23-cv-00286-AAS. On March 27, 2024, the District Court reversed the ALJ's decision finding that the ALJ had failed to properly consider the opinions of two doctors and remanded the matter to the agency. On remand, the case was assigned to a new ALJ who held another hearing on December 12, 2024 (Tr. 744–74) and issued an unfavorable decision on June 23, 2025. (Tr. 720–43). This action followed. The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1994, claimed disability beginning when he was twenty-two years old. (Tr. 104). Plaintiff's highest level of education is the completion of the Tenth Grade. (Tr. 54, 106). Plaintiff alleged disability due to general anxiety disorder, panic attacks, high blood pressure, chronic fatigue weakness, muscle spasms, anti-social disorder, agoraphobia, and obesity. (Tr. 104).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through June 30, 2019 and had not engaged in substantial gainful activity since May 9, 2017, his alleged onset date. (Tr. 726). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had these severe impairments: Generalized Anxiety Disorder, Panic Disorder, Anti-Social Disorder, Agoraphobia and Depressive Disorder. (*Id.*). Notwithstanding these noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform a full range of work at all exertions levels with the following nonexertional limitations:

> The claimant is able to understand, remember and apply simple 2 and 3-step instructions. He can interact appropriately with supervisors, but only occasionally with coworkers in jobs that do not require tandem tasks, and not with the general public. He can concentrate, persist and maintain pace for 2 hours at a time and manage himself and adapt to gradual changes in the workplace. He would be limited to jobs that do not require production rate or pace work.

(Tr. 728). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence. (Tr. 729).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform his past relevant work as a janitor.

(Tr. 733). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a Packer, Kitchen Helper, and Warehouse Worker. (Tr. 734). Based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 735).

## III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration promulgated detailed regulations to regularize the adjudicative process. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her

past relevant work. If the claimant cannot perform the tasks required by his or her prior work, step five of the evaluation requires the ALJ to decide whether the claimant can do other work in the national economy, given his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, it does not accord deference to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the correct

legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV. Analysis

Plaintiff challenges the ALJ's decision on five grounds. First, Plaintiff claims the ALJ failed to properly consider the opinions of Dr. Malowitz, Plaintiff's examining consultative psychologist, and Dr. Annis, the state agency psychologist. Second, Plaintiff asserts the ALJ failed to properly consider Plaintiff's combination of impairments. Third, Plaintiff maintains that the ALJ failed to properly consider Mr. Storch's subjective complaints and the third-party statement of Mr. Storch's aunt. Fourth, Plaintiff argues that the ALJ failed to develop the record. Fifth, Plaintiff asserts that the ALJ failed properly consider a closed period of disability or all on a medical expert to establish the duration of disability. For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A. Consideration of Medical Opinions

First, Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Dr. Malowitz and Dr. Annis. Because Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's revised regulations apply. Under the revised regulations, an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, for each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or

prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-cv-2379-MGL-MGB, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) which highlights while there are several factors ALJs must consider, "[t]he most important factors . . . are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No.

4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[1] 20 C.F.R. § 404.1520c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1).

On February 1, 2021, Dr. Sara Malowitz completed a psychological evaluation of Plaintiff in connection with Plaintiff's application of social security benefits. In her report, Dr. Malowitz opined that Plaintiff "appeared to meet the criteria for Panic Disorder with Agoraphobia" and that Plaintiff's mental health symptoms "appear to be severely impacting activities of daily living, vocational performance, and interpersonal interactions." (Tr. 711). The ALJ found Dr. Malowitz's opinion to be moderately persuasive but disagreed with her conclusion that Plaintiff's mental health symptoms were severely impacting his daily activities. (Tr. 731). In the ALJ's view, Dr. Malowitz's conclusion "was not supported by the other objective evidence in the longitudinal record except for at the start of the claimant's treatment in 2017 and 2018" and "even then, the claimant's symptoms appeared no worse than moderately limiting." (*Id.*). The ALJ went on to explain that "[w]hen examining the record as a whole, it appears to show the claimant had some difficulties with anxiety but that

[1] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

such difficulties were improved with medication management allowing him to be functional in all aspects of his life." (*Id.*).

In his opinion, the ALJ detailed Plaintiff's history of treatment. (Tr. 728–33). In May 2017, Plaintiff began treatment at Bay Area Behavioral Services for generalized anxiety. (Tr. 575). Notably, during these sessions, Plaintiff was reported to visibly shake, stand rather than sit, and listen to music as a means of coping. (Tr. 596, 606, 620, 634–35, 639) Plaintiff also reported disturbed sleep and the inability to drive or shower due to a fear of panic attacks. (Tr. 596). Shortly after beginning treatment at Bay Area Behavioral Services, Plaintiff was prescribed psychiatric medication for his anxiety which slowly helped improve his symptoms. (Tr. 606). Throughout 2017 into 2018, Plaintiff reported several improvements including better bathing and grooming habits, more frequent outings, less worried thoughts, and fewer panic attacks. (Tr. 636–61). In August 2018, Plaintiff was discharged from treatment as his symptoms had stabilized. (Tr. 661). At that time, Plaintiff reported having no panic attacks and that his anxiety issues were "well managed with medication." (*Id.*). Still, Plaintiff voiced he had no interest in obtaining employment. (*Id.*). Following Plaintiff's discharge from Bay Area Behavioral Services in August 2018, Plaintiff's only treatment prior to his evaluation with Dr. Malowitz in February 2021 was periodic visits at Suncoast Community Health Center for primary healthcare and medication management. (Tr. 690, 692, 695, 704, 716). At these appointments, Plaintiff frequently reported stable or reduced anxiety and a decreasing need for medication. (*Id.*). Moreover, even when Plaintiff reported increased anxiety and an inability to leave the couch, he declined an adjustment of his current medication or counseling. (Tr. 713). In July 2023, Plaintiff began periodically seeing Robert Wagenaar, MD

for medication management through PlushCare, a telehealth service. (Tr. 1006). These appointments were relatively uneventful. (Tr. 1006–74). In November 2023, Plaintiff was reported to have moderate anxiety and stable mood. (Tr. 1032). In September 2024, Plaintiff reported that his medications had improved his functionality and quality of life, and he had been exercising more. (Tr. 1061). Based on the record before the Court, Plaintiff had no further treatment.

On appeal, Plaintiff argues that the ALJ wrongfully disregarded Dr. Malowitz's opinion simply because Plaintiff presented well during the evaluation. (Doc. 20 at 10–11). However, though the ALJ summarized Plaintiff's presentation during Dr. Malowitz's evaluation in his opinion, the ALJ clearly linked his rejection of Dr. Malowitz's conclusion to the other evidence in the record based on supportability and consistency factors. (Tr. 730–31). Accordingly, Plaintiff's argument is, in essence, a request that the Court reweigh the evidence, which it cannot do. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) ("We review the [ALJ's] findings to determine whether they are supported by substantial evidence in the record as a whole."). *Freyhagen v. Comm'r of Soc. Sec. Admin.*, Case No. 3:18-cv-1108-J-MCR, 2019

WL 4686800, at *9 (M.D. Fla. Sept. 26, 2019) ("The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.").

Similarly, Plaintiff maintains the ALJ also erred in evaluating the opinions of state agency psychologist Lawrence Annis, Ph.D because though the ALJ found Dr. Annis's opinions to be "largely persuasive," the ALJ did not account for all of Dr. Annis's assessed limitations in forming Plaintiff's RFC and failed to explain this discrepancy. (Doc. 22 at 15–16). On February 1, 2021, Dr. Annis completed the Psychiatric Review Technique (PRT) portion of the Disability Determination Explanation at the reconsideration level and opined that Plaintiff had moderate limitations in all four of the Part B criteria, including "concentrating, persisting, or maintaining pace." (Tr. 140–41). Dr. Annis further opined that Plaintiff would be moderately limited in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms" and would have persistence and pace fluctuations. (Tr. 143–144).

Where a claimant has a "colorable claim of mental impairment," the ALJ must complete a Psychiatric Review Technique Form, ("PRTF"), to assess the claimant's functional limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Moore*, 405 at 1213–14; 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ then incorporates the results of the PRT into the findings and conclusions at steps four and five of the sequential evaluation process. *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But the PRTF is separate from the ALJ's evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her

impairments. The mental RFC is a more detailed assessment of the claimant's ability to function. *Id.* In other words, an ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three.

Here, the ALJ concluded that Plaintiff had moderate limitations in the areas of understanding, remembering, or applying information; interacting with others; and adapting or managing oneself but only a mild limitation in the area of concentrating, persisting, or maintaining pace. The ALJ also found at steps two and three that Plaintiff had severe mental impairments but did not have an impairment or combination of impairments that met or equaled a listed impairment. (Tr. 726–27). Consequently, the ALJ proceeded through the sequential evaluation process and assessed Plaintiff's RFC. The ALJ clarified that "[t]he following residual functional capacity assessment reflects the degree of the limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 728). Specifically, the ALJ included the following relevant limitations in Plaintiff's RFC: only able to understand, remember and apply simple 2 and 3-step instructions; can interact only occasionally with coworkers in jobs that do not require tandem task; cannot interact with the general public; can concentrate, persist, and maintain pace for only 2 hours at a time; and is limited to jobs that do not require production rate or pace work. (*Id.*)

In addressing Plaintiff's argument, Court first notes that the ALJ found Dr. Annis's opinion to be "largely persuasive" not fully absolute. "[F]inding an opinion persuasive also does not mean it is controlling." *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106-JLB-NPM, 2022 WL 8211404, at *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106-JLB-NPM, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022). Indeed, an ALJ is not required

to adopt into an RFC every limitation from a state agency opinion deemed persuasive. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Rather, the assessment of a claimant's RFC is within the exclusive province of the ALJ." *Guth*, 2022 WL 8211404 at *9.

With respect to the Part B criteria, the ALJ, adopted the same moderate limitation finding as Dr. Annis for three of the four criteria. Moreover, in concluding Plaintiff had only a mild limitation in the area of "concentrating, persisting, or maintaining pace," the ALJ reasoned that though Plaintiff's medical records demonstrated a moderate limitation in this area when Plaintiff's panic attacks were at their peak, with proper medication management, Plaintiff's symptoms had improved such that that Plaintiff suffered only a mild limitation in this area. (Tr. 727). This finding is supported by Plaintiff's medical records as detailed above.

Moreover, though not required, the ALJ directly addressed the persistence and pace fluctuations highlighted in Dr. Annis's assessment in his RFC determination by limiting Plaintiff to jobs which do not require production or pace work and require pace maintenance for only two hours at a time. *Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) ("[T]he persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations while completing a PRTF.").

Finally, Plaintiff cites no support for his contention a finding of "moderate limitations interacting with others" required the ALJ to include a specific instruction limiting his interactions with supervisors in Plaintiff's RFC. (Doc. 20 at 16). As explained by the Eleventh Circuit, "there is no requirement that the residual functional capacity assessment list work limitations that the claimant does not have." *Patterson v. Comm'r, Soc. Sec. Admin.*, No. 23-

13317, 2025 WL 2364749, at *3 (11th Cir. Aug. 14, 2025). Here, by only including limitations on interactions with coworkers and the general public, the ALJ implicitly concluded that Plaintiff's moderate limitation in interacting with others did not substantially affect his ability to engage with supervisors. Substantial evidence supports this implicit finding. Though the record supports that Plaintiff suffered from social anxiety, Plaintiff's medical records and assessments also reflect that he was able to listen to instructions and interact with others on an individual basis appropriately. *See id.* at *2–3 (affirming the ALJ's RFC determination which solely limited the plaintiff's interactions with the general public, not coworkers or supervisors, despite the ALJ's PRTF finding of a moderate limitation interacting with others); *Kayla I. o/b/o Pamela I. v. Comm'r, Soc. Sec. Admin.*, No. 1:22-CV-2720-JSA, 2024 WL 6874560, at *10 (N.D. Ga. Feb. 13, 2024) ("[T]he ALJ properly accounted for the Claimant's moderate limitation in interacting with others in the RFC assessment by limiting the Claimant to only "occasional" interaction with the public, but did not include any specific limitations on her ability to interact with coworkers or supervisors, other than limiting her to 'simple and routine tasks' and 'gradual and infrequent workplace changes.'"). Accordingly, the ALJ's assessment of Dr. Annis's opinion, and his subsequent RFC determinations, were supported by substantial evidence.

### B. Combination of Impairments, Subjective Complaints, and Third-Party Statements

Plaintiff's next two arguments directly concern the ALJ's assessment of Plaintiff's RFC. Given the overlapping nature of the arguments, the Court will address them together. First, Plaintiff argues the ALJ failed to properly consider the limiting effects of Plaintiff's agoraphobia in addition to Plaintiff's general anxiety when formulating his RFC and posing

hypotheticals to the VE. Second, Plaintiff argues the ALJ failed to properly consider Plaintiff's subjective complaints and the third-party statement submitted by Plaintiff's aunt in formulating Plaintiff's RFC.

To determine an individual's RFC, an ALJ assesses all the relevant medical and other evidence in the case and considers a claimant's ability to meet the "physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(1), (a)(4). As part of his assessment, the ALJ must consider a claimant's subjective symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529. "If the ALJ decides to discount the claimant's subjective testimony about the intensity, persistence, and limiting effects of her symptoms, the ALJ must articulate explicit and adequate reasons for doing so." *Gonzalez v. Comm'r of Soc. Sec.*, No. 8:23-CV-106-JSS, 2024 WL 489494, at *4 (M.D. Fla. Feb. 8, 2024) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Ultimately, however, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence. See 20 C.F.R. § 404.1546(c); *Beegle v. Comm'r of Soc. Sec. Admin*., 482 F. App'x 483, 486 (11th Cir. 2012).

Here Plaintiff challenges the ALJ's RFC assessment limiting Plaintiff to roles which have no contact with the general public, require only occasional contact with co-workers, and have no tandem tasks requirement. Plaintiff argues that these limitations do not sufficiently account for the severity of Plaintiff's agoraphobia, specifically his alleged inability to leave his home and function independently for small tasks such as going to the store or attending doctor's appointments. (Doc. 20 at 17). In his decision, the ALJ recognized Plaintiff had

diagnoses of Panic Disorder and Agoraphobia (among others) but found that the evidence of record did not support greater interactive limitations than those assessed in the RFC because the record as a whole "appears to show . . . such difficulties were improved with medication management allowing [Plaintiff] to be functional in all aspects of his life." (Tr. 731) (citing various examples in the record).

Plaintiff argues that this assessment failed to properly consider his subjective complaints and the corroborating third-party statement of his aunt. (Doc. 20 at 21–32). At hearing, Plaintiff testified that he is unable to work due to his psychiatric impairments which include debilitating anxiety and frequent panic attacks. (Tr. 54–58). Similarly, his aunt submitted a statement in which she reported that Plaintiff suffered from severe anxiety, physically debilitating panic attacks, an inability to leave the home without significant counseling, and an inherent distrust of people. (Tr. 719).

However, in formulating Plaintiff's RFC, the ALJ considered Plaintiff's complaints of anxiety, agoraphobia, and panic attacks but ultimately concluded that though Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 729). This language demonstrates that the ALJ correctly applied the Eleventh Circuit's standard for evaluating Plaintiff's subjective complaints. *See, e.g., Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at *3 (M.D. Fla. Mar. 15, 2013); *Owens v. Comm'r of Soc. Sec.*, No. 3:19-cv-1373-J-MAP, 2021 WL 651368, at *4 (M.D. Fla. Feb. 19, 2021) (finding that such language "directly addresses

the Eleventh Circuit's pain standard and is not improper if supported by substantial evidence").

With respect to his aunt's statement, the ALJ made a similar finding noting that "The undersigned finds this opinion to . . . not be fully consistent with the objective medical evidence detailing the severity of his symptoms as the claimant is largely independent in all of his activities of daily living such as grooming and self-care, preparing meals, taking his medications, attending doctors visits and is even trusted to watch his autistic cousin while his aunt is away from the home at work." (Tr. 732–33).

In support of these conclusions, the ALJ highlighted that though Plaintiff had significant psychiatric symptoms in 2017, Plaintiff's symptoms dramatically improved with proper medication and counseling. (Tr. 729–30). By April 2018, Plaintiff had reported no panic attacks and controlled anxiety with proper medication. (Tr. 730) (citing Tr. 84). The ALJ went on to emphasize that even when Plaintiff reported some resurfacing symptoms of anxiety and panic attacks in March 2021, a new medication aimed at reducing panic attacks appeared to resolve these symptoms, and by September 2021, Plaintiff was reporting less anxiety and medication dependance. (Tr. 731) (citing Tr. 713, 716). Additional facts supporting the ALJ's determination were the normal findings in Plaintiff's July 2023 psychiatric evaluation, Plaintiff's self-reporting of rare, mild panic attacks following a medication adjustment in November 2023, Plaintiff's continued noted improvements in 2024, and the medical opinion of state agency psychologist Dr. Annis. (Tr. 732–733) (citing Tr. 1010, 1016, 1061).

Accordingly, substantial evidence supports the ALJ's determination Plaintiff's subjective complaints of total disability along with the corroborating statement by his aunt were inconsistent with the record evidence. *Lustgarten v. Comm'r of Soc. Sec.*, 794 F. App'x 843, 848 (11th Cir. 2019) ("Generally, credibility determinations are the province of the ALJ, and we will not disturb a clearly articulated credibility finding supported by substantial evidence.") (quotations omitted). Plaintiff's argument to the contrary essentially asks this Court to reweigh the evidence with an emphasis on Plaintiff's records from 2017 and early 2018 which, as discussed previously, is impermissible. *Moore*, 405 F.3d at 1213.

That Plaintiff suffers from agoraphobia "does not reveal the extent to which [it] limit[s] h[is] ability to work or undermine the ALJ's determination in that regard." *Id.* at 1213 n.6. Accordingly, the undersigned finds the ALJ properly considered limiting effects of Plaintiff's agoraphobia based on the record before him and formulated a RFC which took these limitations into consideration. *See Gonzalez v. Comm'r of Soc. Sec.*, No. 8:23-CV-106-JSS, 2024 WL 489494, at *5 (M.D. Fla. Feb. 8, 2024) (finding the plaintiff had "failed to establish that her agoraphobia causes limitations in excess of those assessed in her RFC" and denying remand).

### C. Development of the Record

Plaintiff next argues that the ALJ failed to properly develop the record by neglecting to request a mental health functional capacity evaluation be completed. (Doc. 20 at 32). Notably, as acknowledged by Plaintiff and discussed at length above, the Social Security Administration did send Mr. Storch out for a consultative psychological examination on February 1, 2021. Still, Plaintiff avers that this was insufficient and argues the ALJ should

have either "recontact[ed] Dr. Malcowitz [to complete a residual functional capacity form] or sen[t] Mr. Storch out for another more recent psychological evaluation with a residual mental capacity statement included." (*Id.* at 33).

The ALJ has a basic duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Id.* To successfully argue for remand for further development of the record, a plaintiff must show evidentiary gaps "which result in unfairness or 'clear prejudice.'" *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). Moreover, if there is sufficient information in the record for the ALJ to make an informed decision, the ALJ is not required to order a consultative examination. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Here, as discussed at length above, the record contained sufficient evidence for the ALJ to evaluate Plaintiff's disability status. In formulating Plaintiff's RFC, the ALJ considered the September 2020 PRT assessment of state agency psychologist Brian McIntyre, Ph.D., the subsequent February 2021 PRT assessment of state agency psychologist Lawrence Annis, Ph.D., the consultative psychological evaluation of Sara Malowitz, Psy.D., Plaintiff's treatment notes from three different medical providers, and the statements of Plaintiff and his aunt. Plaintiff's argument regarding a further mental health functional capacity evaluation theorizes that if Dr. Malowitz was asked to complete a mental functional capacity statement she would have included greater restrictions on Plaintiff's ability to work and this in turn could have impacted Dr. Annis's opinions as well. (Doc. 20 at 33). Plaintiff's argument thus essentially asks this Court to reweigh the evidence in this matter based on future speculative

evidence and fails to demonstrate a clear evidentiary gap justifying remand. *See, e.g.*, *Henderson v. Comm'r of Soc. Sec.*, 353 F. App'x 303, 305 (11th Cir. 2009) (holding claimant failed to show prejudice for failure to develop the record as claimant did "not explain how the absence of a mental RFC assessment from the record precluded the ALJ from making an informed disability determination. Nor does [claimant] explain how such an assessment would have affected the ALJ's overall disability determination"); *Powers v. Comm'r of Soc. Sec.*, No. 8:14-cv-304-T-DNF, 2015 WL 1221275, at *3–7 (M.D. Fla. Mar. 17, 2015) (thoroughly discussing and rejecting claimant's argument that ALJ needed to obtain consultative mental examination); *Amedio v. Astrue*, No. 8:10-cv-1350-T-TGW, 2011 WL 2446610, at *6 (M.D. Fla. June 15, 2011) (holding that consultative examination was not necessary and "[t]he thought that a consulting psychologist, after an examination, could plausibly opine as to any functional mental limitations suffered by the plaintiff due to depression [six and a half years ago] is nonsensical"); *Gentle v. Kijakazi*, No. 8:21-CV-2900-AEP, 2023 WL 2446609, at *5 (M.D. Fla. Mar. 10, 2023) ("The mere lack of a consultative examination is inadequate to meet Plaintiff's burden to demonstrate prejudice.").

Moreover, the case law cited by Plaintiff does not mirror the present case. In *Hernandez v. Barnhart*, the Court found the ALJ erred in not obtaining a medical source statement from the consultants who actually examined the plaintiff because the ALJ "improperly played the role of medical expert, interpreted the raw psychological and medical data, and drew her own conclusions as to the claimant's RFC." 203 F. Supp. 2d 1341, 1355 (S.D. Fla. 2002) (quotations omitted). Here, there is no indication the ALJ usurped the role of a medical professional when he weighed the medical opinions in light of all the other evidence.

Similarly, in *Rease v. Barnhart*, the court found the record was not fully developed where the ALJ relied upon the opinion a non-examining state agency orthopedist who rendered an opinion as to the claimant's limitations without reviewing pertinent treatment records. 422 F. Supp. 2d 1334, 1373–74 (N.D. Ga. 2006). Here, Dr. Annis reviewed all pertinent treatment records.

Accordingly, the Court finds that ALJ properly developed the record and was not required to request a further functional capacity statement to make an informed decision. *Watkins v. Comm'r, Soc. Sec. Admin.*, No. 23-12765, 2025 WL 18514, at *16 (11th Cir. Jan. 2, 2025) ("There is no requirement . . . that there be medical opinion evidence from a physician that matches the RFC determination. Rather, the regulations make clear that the task of determining a claimant's RFC and ability to work is solely within the province of the ALJ, not the claimant's doctors.").

**D. Duration of Disability**

Finally, Plaintiff argues that the ALJ erred in failing to consider a closed period of disability. (Doc. 20 at 33–34). In support of this, Plaintiff cites to his alleged condition in February/March 2021 and argues that the ALJ failed to consider whether there was a twelve-month period where Plaintiff was disabled prior to improvement. (Doc. 20 at 34).

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). A "closed period" of disability may be considered when a claimant had an impairment that: 1) prevented substantial gainful activity

for at least twelve months, 2) continued to or through the month of filing, and 3) ceased in or after the month of filing but prior to the date of adjudication. *Harvey v. Astrue*, No. 08-cv-455, 2009 WL 2634399, at *8 (M.D. Fla. Aug. 24, 2009). However, a closed period claim is precluded from being raised on appeal where a plaintiff failed to request an ALJ's consideration of a closed period of disability. *Pescaru-Nedici v. Bisignano*, No. 0:25-CV-60506-LFL, 2026 WL 1180769, at *4 (S.D. Fla. Mar. 30, 2026).

Here, Plaintiff cites to no instance in which he requested a closed period of disability, and the Court can fine none in the record. Moreover, even if the Court were to entertain Plaintiff's argument, the ALJ did consider the possibility of a closed period of disability and found that Plaintiff's alleged impairments "considered singly or together, have caused only transient and mild symptoms and limitations, are well controlled with treatment, **have not met the 12-month-durational requirement** or are otherwise not adequately supported by the medical evidence in the record." (Tr. 726) (emphasis added). Importantly, the ALJ's conclusion is supported by substantial evidence. (Tr. 728–35). *See Vacca v. Comm'r of Soc. Sec.*, No. 18-cv-455, 2019 WL 3214242, at *6 (M.D. Fla. Jul. 17, 2019) ("When an ALJ determines that a claimant is not disabled at any time during the period from his alleged onset date to the date of the hearing and this decision is supported by substantial evidence, then the ALJ has not erred in failing to consider a claimant's eligibility for a closed period of disability.") (citing *Jones v. Comm'r of Soc. Sec.*, 181 F. App'x 767, 772–73 (11th Cir. 2006))

In his opinion, the ALJ highlighted that even when Plaintiff's symptoms were at their peak in 2017 and 2018, they "appeared no worse than moderately limiting when looking at the medical evidence record as a whole." (Tr. 731). Moreover, the ALJ directly addressed

Plaintiff's condition in 2021 noting that while there were reports of Plaintiff's anxiety symptoms worsening in March 2021, these symptoms improved with the introduction of a new panic medication, and by September 2021 Plaintiff was reporting reduced anxiety and less dependency on medication. (*Id.*). The ALJ therefore concluded that Plaintiff symptoms had stabilized. (*Id.*).

Finally, the case cited by Plaintiff in support of his position, *Rodriguez v. Comm'r of Soc. Sec.*, bears no similarities to the instant matter. In *Rodriguez*, the plaintiff alleged disability due to a visual impairment for which he submitted an application for benefits on June 11, 2012. 737 F. App'x 514. 516 (11th Cir. 2018). On November 30, 2012, the plaintiff underwent eye surgery. *Id.* However, in finding the plaintiff not disabled, the ALJ only considered evidence from after the plaintiff's eye surgery. *Id.* Accordingly, the Court found that the ALJ erred in failing to consider if Plaintiff was disabled for a period of time *before* his eye surgery. *Id.* at 516–17. Plaintiff attempts to analogize this case to the instant matter by arguing the ALJ erred by relying on Plaintiff's improvement with medication after the onset date as a basis to find Mr. Storch not disabled. However, based on the record before this Court, the ALJ clearly considered all evidence and concluded that Plaintiff did not suffer from a closed period of disability.

Lastly, as to Plaintiff's conclusory assertion that a medical expert was needed to determine whether a period of disability occurred, the Court reiterates its analysis in the preceding section finding that the ALJ fully developed the record. Here, as before, Plaintiff has failed to show an evidentiary gap demonstrating "clear prejudice." *Brown*, 44 F.3d at 935.

## V. Conclusion

The undersigned notes that when reviewing an ALJ's decision the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239.

IT IS ORDERED:

1. The decision of the Commissioner is affirmed.
2. The Clerk is direct to enter final judgment in favor of the Commissions and close the case.

**ORDERED** in Tampa, Florida, on August 14, 2026

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE